# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KENALL MANUFACTURING CO., | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 1284 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| H.E. WILLIAMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Kenall Manufacturing Company ("Kenall") is currently withholding documents and refusing to answer deposition questions under a claim of attorney-client privilege. H.E.Williams, Inc. ("HEW") contends that Kenall engaged in inequitable conduct during the prosecution of its patents '241 and '287, which requires a piercing of the privilege. The parties are not at odds over whether the information being sought is privileged, but they disagree over what the Federal Circuit has to say about these types of situations.

According to HEW's Answer, Amended Affirmative Defenses, and Amended Counterclaims, what the plaintiff did and did not do before the Patent Office is as follows: Kenall knew the Patent Office believed that a shoulder/flange sealing arrangement as claimed in the '241 patent was a novel feature, but Kenall, in a related suit over its '055 patent in which it was the plaintiff, learned that this feature was shown in the prior art. Nonetheless, Kenall, it is claimed, withheld that information from the Patent Office, and, as a result the '241 patent was erroneously granted. Moreover, HEW claims that, contrary to Patent Office rules, Kenall never even informed the Patent Office that it had brought three patent infringement suits to enforce its '055 patent while the '241 patent application was pending.

Kenall brought this suit, which asserts the '055 and '241 patents against HEW, in February 2009. HEW served detailed invalidity contentions on Kenall in December 2009. Kenall subsequently sought reexamination of its patents, but failed to inform the Patent Office of HEW's invalidity contentions as well as the prior art showing the shoulder/flange sealing arrangement. When the Patent Office rejected Kenall's reexamination requests for non-compliance with the Patent Office rules, HEW claims that Kenall misrepresented to this Court that the Patent Office had "confirmed" its patents on the "merits."

Kenall filed a third, related patent application in January 2009 – the '287 application. It was not until HEW moved for leave to file its inequitable conduct and unclean hands counterclaims in this litigation in late July 20011 that Kenall finally informed the Patent Office about this case, its three prior infringement suits brought to enforce the '055 patent, and the prior art showing the shoulder/flange sealing arrangement. Kenall, however, still has not provided HEW's invalidity contentions to the Patent Office in connection with the '287 application.

Inequitable conduct can satisfy the crime-fraud exception to the attorney-client privilege. *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1289 (Fed.Cir. 2011). The parties agree that, in order to pierce the attorney-client privilege based on inequitable conduct a party must show:

> (1) a representation of material fact, (2) the falsity of that representation, (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to the equivalent of intent (scienter), (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon, and (5) injury to the party deceived as a result of his reliance on the misrepresentation.

*Unigene Laboratories, Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1359 (Fed.Cir. 2011). *See also In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 807 (Fed.Cir. 2000); *Murata v. Bel Fuse*, 2007 WL

781252, 4 (N.D.Ill. 2007). The Federal Circuit has made clear that intent and materiality are two separate elements that a court must consider independently: "[p]roving an applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Therasense*, 649 F.3d at 1290. In this context, a material omission can be just as reprehensible as a material misrepresentation. *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1347 (Fed.Cir. 2007); *Nobelpharma AB v. Implant Innovations, Inc.,* 141 F.3d 1059, 1070 (Fed.Cir.1998).

While the parties agree on that much, that do not agree on what constitutes "showing" inequitable conduct in order to pierce the privilege. Citing *Therasense,* HEW initially argues that it need only present "evidence sufficient to support the inference of fraud" and that it need only show fraud to be one possible inference that could be drawn. (*Motion to Compel*, at 12). But that reading of *Therasense* omits the Federal Circuit's clear insistence that:

> specific intent to deceive must be the *single most reasonable inference* able to be drawn from the evidence. Indeed, the evidence must be *sufficient to require* a finding of deceitful intent in the light of all the circumstances. Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found.

649 F.3d at 1290-91 (emphasis supplied). Consequently, HEW's opening brief is based on an imprecise reading of what *Therasense* requires before the privilege, to use Justice Cardozo's famous phrase in *Clark v. United States*, 289 U.S. 1, 15 (1933), "takes flight."

Kenall contends that HEW must come forward with "clear and convincing evidence" to prove both materiality and intent. Allegations and inferences are not enough. (*Kenall's Corrected Response*, at 2). The standard is, indeed, clear and convincing evidence, but, as HEW points out in its reply brief, where does that clear and convincing evidence come from when the privilege is

3

being asserted to throw a blanket over it? That is the perpetual dilemma a party seeking to breach the privilege faces. Most of the cases imposing the "clear and convincing" standard are not privilege cases, but cases dealing with what must be shown to prevail on a claim or defense of inequitable conduct. *See. e.g., Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1335 (Fed.Cir. 2012); *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1235 (Fed.Cir. 2011); *Cordis Corp. v. Boston Scientific Corp.*, 658 F.3d 1347, 1360 (Fed.Cir. 2011); *Therasense*, 649 F.3d at 1290.

In *Unigene*, the Federal Circuit held that to allow the privilege to be pierced, the party seeking to overcome the privilege must present "independent and clear evidence" that established "a *prima facie* case of fraud," which is generally held not to exist absent clear evidence of a deceptive intent together with a clear showing of reliance. 655 F.3d at 1359. *Unigene* shows the error of Kenall's intimation that the party seeking to overcome the attorney-client privilege must conclusively prove fraud or necessarily submit direct evidence to make a *prima facie* showing of fraud, as do *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 808 (Fed.Cir. 2000) and *Apotex Corp. v. Merck & Co., Inc.*, 507 F.3d 1357, 1362 (Fed.Cir. 2007).

In its reply brief, HEW relies on a case from the Northern District of Illinois, in which the court said that "a *prima facie* case of fraud exists when the moving party presents evidence sufficient to require the adverse party, the one with the superior access to the evidence and in the best position to explain things, to come forward with that explanation." *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 2003 WL 22889442, *1 (N.D.Ill. 2003). But *For Your Ease Only* was based on *Matter of Feldberg,* 862 F.2d 622, 626 (7th Cir.1985) and *United States v. Davis,* 1 F.3d 606, 609 (7th Cir.1993)), *see* 2003 WL 22889442, *1, not Federal Circuit case law, which controls here. *See Unigene*, 655 F.3d at 1358; *Spalding*, 203 F.3d at 803-04. The distinction between the Seventh

4

Circuit's and the Federal Circuit's approach is significant. The Seventh Circuit has characterized its standard of proof as "lax," *Feldberg*, 862 F.2d at 626, while the Federal Circuit looks upon piercing the privilege as "extreme." *Unigene*, 655 F.3d at 1359.

It may not be entirely clear just how much evidence need be produced, but one thing is clear: allegations alone are insufficient. Yet, that is what HEW's initial presentation consisted of. The Federal Circuit, relying on Justice Cardozo's opinion in *Clark*, has held that the *prima facie* case requires evidence, that the charge of fraud – or inequitable conduct – "'has some foundation in fact.'" *Apotex*, 507 F.3d at 1362. It has emphasized that mere allegations are not enough. *Unigene*, 655 F.3d at 1359; *Spalding*, 203 F.3d at 808. Even HEW's non-Federal Circuit case, *For Your Ease*, required *some* evidence.[1] In the instant case, virtually all of the citations supporting HEW's charge of inequitable conduct in its opening brief are to HEW's own allegations in its Answer, Amended Affirmative Defenses, and Amended Counterclaims. (*Motion to Compel*, at 3-7). The few exceptions are references to two patents HEW feels are prior art. If well amplified, those prior art references might tend to demonstrate materiality, but not, alone, intent. Given the exacting standards of the Federal Circuit, and the fact that the opening brief was based on references to the allegations in the answer, the motion cannot carry the day. *Unigene*, 655 F.3d at 1359; *Spalding*, 203 F.3d at 808.

It is not until its reply brief that HEW provided evidence to support its assertions. But,

---

[1] The Supreme Court in *Clark* rejected early cases apparently to the effect that a mere charge of illegality, not supported by any evidence, "will set the confidences free." 289 U.S. at 15. "But this conception of the privilege [the Court held] is without support in later rulings. 'It is obvious that it would be absurd to say that the privilege could be got rid of merely by making a charge of fraud.'" "To drive the privilege away," there must be "'something to give color to the charge'; there must be 'prima facie evidence that it has some foundation in fact.'" *Clark,* 289 U.S. 1 at 15.

5

arguments and evidence that could have been raised in the opening brief but are first raised in a reply brief are generally deemed waived. *Judge v. Quinn,* 612 F.3d 537, 542 (7th Cir.2010); *Cornucopia Institute v. U.S. Dept. of Agriculture,* 560 F.3d 673, 678 (7th Cir.2009); *Bodenstab v. County of Cook*, 569 F.3d 651, 658 (7th Cir.2009). Kenall, however, did not object. Instead, it chose to file a sur-reply and attack the evidence and case citations HEW did not present until its reply brief. By choosing this course, Kenall waived the waiver argument. *See Nunez v. United States*, 546 F.3d 450, 452 (7th Cir. 2008)(Easterbrook, J.)*; Miller Aviation v. Milwaukee County Bd. Of Supervisors*, 273 F.3d 722, 727 (7th Cir. 2001). This is exactly what occurred in *Tellabs Operations, Inc. v. Fujitsu Ltd.*, 2012 WL 1520333, 5 (N.D.Ill. 2012).

In any event, the evidence presented by HEW in its reply brief came in a rather massive volume that includes hundreds of pages. HEW also listed another twenty exhibits already filed along with other documents in this case. (*See Index to Evidence*). The problem is that HEW does not cite to any of this evidence specifically in its reply brief. It only states, in a footnote, that it "has provided a summary of all the evidence in the record supporting this Motion in the first page of the Appendix of Exhibits attached to this Reply Brief." (*HEW's Reply*, at 3 n.2). The Appendix of Exhibits is sectioned into Exhibits A through H, but none of those exhibits is referenced in the reply brief.

HEW has executed what, in effect, is a document dump, which the court is left to sift through. The hundreds of pages of exhibits are apparently to be matched by the court to the three or four pages of allegations in HEW's opening brief that it drew from its answer. But judges are not required to "play archaeologist with the record." *DeSilva v. DiLeonardi,* 181 F.3d 865, 867 (7th Cir.1999). They "'are not like pigs, hunting for truffles buried in [the record],'" *Gross v. Town of*

*Cicero, Ill.*, 619 F.3d 697, 702-03 (7th Cir. 2010), and they are not required to scour a record to ascertain where or whether there are portions supporting a party's ultimate conclusion. *See, e.g., State Contracting & Engineering Corp. v. Condotte America, Inc.*, 197 Fed.Appx. 915, 919 (Fed. Cir. 2006). That is an advocate's job, and if a judge undertakes the role, the adversary system is adversely affected. *See Burdett v. Miller,* 957 F.2d 1375, 1380 (7th Cir. 1992); *Alioto v. Town Of Lisbon,* 651 F.3d 715, 721 (7th Cir. 2011).

Here is how the court put it in *Minemyer v. R-Boc Representatives, Inc.,* 695 F.Supp.2d 797, 802-803 (N.D.Ill. 2009):

> "A court does a disservice to the system, and to one party when it assists the other party in the presentation of its case. Indeed, the Seventh Circuit has cautioned against going beyond the parties' presentations. *See Hartmann v. Prudential Ins. Co.,* 9 F.3d 1207, 1214 (7th Cir.1993); *Weissman v. Weener,* 12 F.3d 84, 86 (7th Cir.1993). 'The benefit of adversarial presentation is a major reason why judges should respond to the parties' arguments rather than going off independently.' *Kay v. Board of Educ. of City of Chicago,* 547 F.3d 736, 738 (7th Cir.2008) (Easterbrook, C.J.). *See also WWC Holding Co., Inc. v. Sopkin,* 488 F.3d 1262, 1279-1280 (10th Cir.2007) (Gorsuch, J., dissenting).
>
> Even if a judge were to endeavor to assist both sides, it could never do so equally, and some unfairness would result. The Federal Circuit has quoted with approval Judge Kleinfeld of the Ninth Circuit:
>
>> '... requiring the district court to search the entire record, even though the adverse party's response does not set out the specific facts or disclose where in the record the evidence for them can be found, is unfair. The cases often refer to the unfairness to the district court, which is substantial, but hardly the full story. If a district court must examine reams or file cabinets full of paper looking for genuine issues of fact, as though the judge were the adverse party's lawyer, an enormous amount of time is taken away from other litigants. Other litigants could have that judicial time, and get their cases resolved better and faster, if the district court could limit examination to the materials submitted in opposition to the summary judgment motion.
>>
>> Requiring the district court to search the entire record for a genuine

>issue of fact, even though the adverse party does not set it out in the opposition papers, is also profoundly unfair to the movant. The gist of a summary judgment motion is to require the adverse party to show that it has a claim or defense, and has evidence sufficient to allow a jury to find in its favor on that claim or defense. The opposition sets it out, and then the movant has a fair chance in its reply papers to show why the respondent's evidence fails to establish a genuine issue of material fact. If the district court, or later this court, searches the whole record, in practical effect, the court becomes the lawyer for the respondent, performing the lawyer's duty of setting forth specific facts showing that there is a genuine issue for trial. The movant is then denied a fair opportunity to address the matter in the reply papers.' [*In re*] *Cygnus Telecommunications* [*Technology, LLC, Patent Litigation*]*, 536 F.3d [1343,] 1352-53 [(Fed. Cir. 2008)]."

*Minemyer,* 695 F.Supp.2d at 801-802..[2]

While these observations were in the context of summary judgment, the principles and reasoning apply whenever a court is presented with large volumes of materials and the briefs are not sufficiently developed or directive. *Compare Ohio–Sealy Mattress Mfg. Co. v. Sealy Inc.,* 776 F.2d 646, 664 (7th Cir.1985)(a party objecting to a petition for attorneys' fees must state the objections with particularity to prevent voluminous amounts of fee data being dumped "on the bench for the judge to sort through and resolve.")

As already noted, the Federal Circuit regards piercing the attorney-client privilege as an "extreme remedy." *Unigene*, 655 F.3d at 1359. It was HEW's burden to show its entitlement to this extreme remedy with clear evidence of deceptive intent together with a clear showing of reliance, *Unigene Laboratories, Inc.*, 655 F.3d at 1359, not just allegations, and to do so under the appropriate standard of proof. Yet, in its reply brief, HEW relied on a standard of proof from a body of case law

---

[2] The Federal Circuit called Judge Kleinfeld's observations in *Carmen v. San Francisco Unified School District,* 237 F.3d 1026 (9th Cir.2001 "exceptionally perceptive and forceful...." *In re Cygnus Telecommunications Technology, LLC, Patent Litigation,* 536 F.3d at 1352.

that is inapplicable here. It was also incumbent upon HEW to direct the court to specific evidence that supported its assertions of not only materiality, but intent. It did not do so.

I do not in the slightest mean to be critical of HEW's extremely able and dedicated counsel. The approach that was taken in this round of briefing is one that is not atypical, especially in complicated cases. Nonetheless, the fact remains that our Court of Appeals, like those throughout the country, are insistent that judges not be forced unwittingly to become, in effect, counsel for one side or the other and that they not undertake the work of counsel, lest other litigants waiting in the endless queue of cases not be deprived of time needed to resolve their disputes. *See Otto v. Variable Annuity Life Ins. Co.,* 134 F.3d 841, 854 (7th Cir.1998); *Chicago Observer, Inc. v. City of Chicago*, 929 F.2d 325, 329 (7th Cir. 1991); *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077 (7th Cir.1987).

## CONCLUSION

The defendants' Motion to Compel Kenall to produce privileged information [82] is denied.

ENTERED:_____
UNITED STATES MAGISTRATE JUDGE

DATE: 9/24/12